Sam **HEDGE, Jim Stengrim, William Decker, Lowell Nelson, individually, on behalf of themselves and others similarly situated, Plaintiffs,**

v.

**Richard E. LYNG, Secretary of the United States Department of Agriculture; Vance Clark, Administrator of the Farmers Home Administration; Russ Bjorhud, Minnesota State Director of the Farmers Home Administration, Defendants.**

**Civ. No. 4–86–610.**

United States District Court, D. Minnesota, Fourth Division.

June 30, 1987.

Opinion on Request to Represent Larger Class Aug. 25, 1987.

Juliet M. Tomkins, and James T. Massey, Farmers' Legal Action Group, St. Paul, Minn., for plaintiffs.

William Robert Irvin, Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Farmers Sam Hedge, Jim Stengrim, William Decker, and Lowell Nelson bring this action for injunctive and declaratory relief against the Secretary of Agriculture and the Administrator and Minnesota State Director of the Farmers Home Administration (FmHA). Plaintiffs challenge the legitimacy of regulations governing FmHA County Commissioner elections and the elections themselves. The first amended complaint alleges violations of the Food Security Act of 1985, the Administrative Procedures Act (APA), and the challenged regulations. It also alleges denial of constitutional rights to equal protection and freedom of association. The court denied defendants' motion to dismiss on June 18, 1987. The matter is now before the court on plaintiffs' motions for leave to file a second amended complaint, for class certification, for a preliminary injunction, and for partial summary judgment. A hearing was held on all motions on June 19, 1987. Since the injunctive relief sought relates to a June 30 election, it is necessary to reach the issues raised by that motion first. A subsequent order will consider the remaining issues.

### A. Background

The pertinent facts are substantially undisputed. FmHA is the federal agricultural and rural development agency. It is the lender of last resort for farmers and ranchers seeking to finance their operations or improve their property. 7 U.S.C. §§ 1921–2000. Wherever FmHA operates its farm loan programs, it must establish a three member "county committee." 7 U.S.C. § 1982(a). These committees have numerous functions, including determining eligibility for certain types of loans, making recommendations regarding "problem cases" and applications for compromise, adjustment or cancellation of debts, and advising the FmHA county supervisor on certain matters. 7 C.F.R. § 2054.1103(a). Certification by the county committee is a prerequisite for obtaining certain loans. *See e.g.* 7 C.F.R. §§ 1941.33 and 1943.33.

Until 1986, the Secretary of Agriculture (the "Secretary") appointed all three members of each county committee. 7 U.S.C. § 1982 (amended 1985). Under the Food Security Act of 1985, Pub.L. 99–198, 99 Stat. 1354, however, two of the three county committee members are to be elected by the farming community:

In each county or area in which activities are carried out under this chapter, there shall be a county committee composed of three members. Two members shall be elected, from among their number, by farmers deriving the principal part of their income from farming who reside within the county or area, and one member, who shall reside within the county or area, shall be appointed by the Secretary for a term of three years. At the first election of county committee members under this subsection, one member shall be elected for a term of one year and one member shall be elected for a term of two years. Thereafter, elected members of the county committee shall be elected for a term of three years. The Secretary, in selecting the appointed member of the county committee, shall ensure that, to the greatest extent practicable, the committee is fairly representative of the farmers in the county or area. The Secretary may appoint an alternate for each member of the county committee. Appointed and alternate members of the county committee shall be removable by the Secretary for cause. The Secretary shall issue such regulations as are necessary relating to the election and appointment of members and alternate members of the county committees.

7 U.S.C. § 1982(a).

As required by statute, the Secretary, acting through FmHA, developed regulations. He did not, however, comply with the general APA procedure, which requires a notice of proposed rulemaking and a comment period before final regulations are

published. Rather, without notice, the Secretary published "interim final rules" on May 22, 1986. A 30-day comment period followed the publication of the regulations but any comments that may have been received apparently did not affect the regulations.

Under these regulations, FmHA borrowers and their spouses and dependent children are not eligible for committee positions. 7 C.F.R. § 2054.1104(f). Persons who are political party officers or employees or "active in the management or affairs of any political club organization, or committee" are also ineligible. 7 C.F.R. § 2054.1104(d).

The interim final regulations also provide that the county committee elections must be held in June, § 2054.1105(a), and that the period for nominating by petition "should begin 45 days and end 20 days before election." § 2054.1111(b)(1). The opportunity to nominate is to be announced at least in local publications of general circulation. § 2054.1111(b)(2). Nominating petitions require three signatures, but nominees may sign their own petitions. § 2054.1111(b)(4). No one may sign more than one nominating petition. *Id.*

On May 28, 1986, the Administrator of FmHA (the "Administrator") issued a "Procedure Notice" adopting the May 22 regulations and setting a calendar for the 1986 county committee elections. The county supervisors were to publish notice of the nominating period by Thursday, June 5, 1986, but to accept petitions only until Tuesday, June 10, 1986.

The plaintiffs assert that they were entitled to nominate themselves or others under the statute, but prevented from doing so by the regulations and procedure notice. They challenge the regulations as unconstitutional and contrary to both the Act and the APA. They challenge the elections held pursuant to the procedure notice as unconstitutional, contrary to the APA, and contrary to the challenged regulations. Defendants respond that the ineligibility of certain groups for committee membership is both necessary and reasonable and that congressional and agricultural time constraints both required an admittedly rushed 1986 election calendar.

### B. Motion for Leave to File Second Amended Complaint

■ Plaintiffs seek to amend their complaint to add a sixth claim alleging that defendants' conduct of the 1986 county committee elections violated both the interim final regulations and the May 22 procedure notice. The proposed second amended complaint also contains a new paragraph of factual allegations relating to count six and a demand for a preliminary injunction.

Leave to amend a pleading should be "freely given when justice so requires." Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Defendants do not oppose amendment per se, but argue that the addition of count 6 and the supporting allegations in paragraph 51 would be futile because plaintiffs lack standing to assert count 6. Defendants' standing argument is fact-related and more appropriately considered on a motion for summary judgment. The motion for leave to amend should therefore be granted.

### C. Motion for Class Certification

■ Plaintiffs seeking to represent a class have the burden of establishing that they are entitled to class certification under Rule 23 of the Federal Rules of Civil Procedure. *E.g. Smith v. Merchants & Farmers Bank*, 574 F.2d 982, 983 (8th Cir.1978). Two requirements not expressly stated in Rule 23 are implicit: a "class" must exist, *e.g. Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir.1976), and the class representatives must be members of the class. *E.g. Smith v. Board of Education*, 365 F.2d 770, 777 (8th Cir.1966). *See also General Telephone Co. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982) ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.") The plaintiffs must also show that

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to

the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In addition, the class must satisfy one of the subdivisions of Rule 23(b). Here, plaintiffs assert that

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole....

Fed.R.Civ.P. 23(b)(2)

## 1. *Existence of a Class*

Plaintiffs seek certification of a single class, but their proposed class description appears to identify both a class and two subclasses. The proposed class would include all Minnesota farmers entitled to vote in FmHA elections. The two apparent subclasses would include (1) Minnesota farmers who wished to run for committee positions but were ineligible under 7 C.F.R. § 2054.1104(d) and (f) and (2) Minnesota farmers who wished to run or to nominate a candidate for committee positions, but were unable to do so because they could not satisfy the nomination requirements within the five days provided under the May 22, 1986 procedure notice. For present purposes, the court considers only whether plaintiffs can maintain a class of

All farmers in the State of Minnesota who are eligible to vote in FmHA county committee elections, but ineligible to run

for county committee membership under 7 C.F.R. § 2054.1104(d) and (f).[1]

Defendants' main objections to the existence of a class were directed at plaintiffs' broadest possible class, that of all Minnesota farmers. It is not clear whether defendants would consider their argument equally applicable here. In any event, the court finds this definition sufficient to identify a class. All of the members were denied opportunities to run for committee positions and to vote for persons who were ineligible under 7 C.F.R. § 2054.1104(d) and (f). *Cf. Antonio v. Kirkpatrick*, 579 F.2d 1147, 1149 (8th Cir.1978) ("any limitation imposed ... on the ability of persons to become candidates for public office necessarily places some burden on the rights of voters.") All of the members of the proposed class also lacked notice of proposed rule making and an opportunity to comment on proposed rules before they became effective. An identifiable class exists.

## 2. *Plaintiffs' Membership in the Class*

Defendants appear to challenge plaintiffs' membership in the proposed class on two grounds: that two are not farmers [2] and that all lack standing to assert the claims in the complaint. It appears that at least three of the plaintiffs are farmers. Defendants apparently concede that plaintiffs Stengrim and Decker are farmers, but suggest that Hedge may not receive more than 50% of his income from agricultural production. The evidence appears to be to the contrary. *See* Deposition of Sam Hedge at pp. 8, 12.[3] Plaintiffs Stengrim, Decker and Hedge are farmers.

They first argue that, while plaintiffs may have standing to challenge the exclu-

---

**1.** This alleged class appears to be closely tied to the injunctive relief sought before June 30. The class determination "may be altered or amended before the decision on the merits." Fed.R. Civ.P. 23(c)(1); *General Telephone Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed. 2d 740 (1982) (judge remains free to modify certification order in light of subsequent developments in the litigation). The court retains "discretion to limit or redefine the class in an appropriate manner to bring the action within Rule 23." C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1760 (2d ed. 1986) (hereinafter, *Federal Practice* ). "Where a class is found to include subclasses divergent in

interest, the class may be divided correspondingly and each subclass treated as a class." Fed. R.Civ.P. 23(c)(4), advisory committee note.

**2.** The parties agree that "farmers" must derive the principal part of their income from farming, that is, derive more than 50% of their gross income from agricultural production. The court uses the term "farmer" as the parties define it.

**3.** Plaintiff Nelson's status is less clear, and the court therefore defers determining whether he is a proper member of the class.

sion of FmHA borrowers from committee eligibility, they lack standing to challenge the exclusion of spouses and dependent children of FmHA borrowers. The regulations do not, however, categorize borrowers, spouses and children as three separate groups. They are parts of a single group; the exclusion applies to any

> individual (or spouse or dependent child of such an individual), stockholder of a corporation, member of a cooperative, joint operator of a joint operation, or partner with an outstanding loan insured or guaranteed by FmHA....

7 C.F.R. § 2054.1105(f). All of the persons described in this subsection are treated the same way by defendants and all appear to have the same possible arguments with this treatment. Defendants have not suggested any basis for treating them as members of different classes for the purpose of pursuing this litigation.

Defendants also question plaintiffs' standing to bring count 5, which challenges the publication of the regulations as interim final rules. According to defendants, plaintiffs have not shown that they were injured by the lack of notice and lack of an opportunity for comment before the regulations became effective. Defendants' argument rests on their assertion that plaintiffs provide "absolutely no evidence ... that [they] sought to comment on the regulations during the thirty day comment period" that followed publication of the interim final rules or that they sought to comment on any other FmHA regulations. Plaintiffs' failure to comment on previous regulations is of little significance in determining their interest in these regulations. This is particularly true where, as here, Congress specifically designed new legislation to open up to constituents a process previously controlled by the Secretary. *See* H.Rep. 99–271 Part 1, 99th Cong., 1st Sess. 100–101 (1985), 1985 U.S.Code Cong. & Admin.News, 1103, 1204–1205. Neither

can plaintiffs' failure to participate in a post hoc comment period be held against them. As several courts have noted,

> Permitting the submission of views after the effective date is no substitute for the right of interested persons to make their views known to the agency in time to influence the rule-making process in a meaningful way.... "We doubt that persons would bother to submit their views or that the Secretary would seriously consider their suggestions after the regulations are a *fait accompli.*"

*LeVesque v. Block,* 723 F.2d 175, 187 (1st Cir.1983); *United States Steel Corp. v. United States Environmental Protection Agency,* 595 F.2d 207 (5th Cir.1979) (citations omitted). Plaintiffs cannot be asked to prove that they would have taken advantage of an opportunity to comment on the proposed regulations when no such opportunity was provided. Plaintiffs Stengrim, Decker and Hedge have standing to raise at least counts 1, 2, 3 and 5.[4] Plaintiff Nelson, if a farmer, would also have standing.

### 3. *Numerosity*

 Plaintiffs need not prove the precise number of class members, *e.g. Paxton v. Union National Bank,* 688 F.2d 552 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983), but they must show that the class is "so numerous the joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). There are more than 10,000 FmHA borrowers in Minnesota and an uncertain, but surely sizeable, number of "politically active" farmers. Even a fraction of these would make joinder impracticable and the class sufficiently numerous to satisfy Rule 23(a)(1).

### 4. *Commonality*

 Plaintiffs must show that there are questions of law or fact common to the

---

4. Counts 4 and 6 challenge the procedures governing the 1986 county elections and the conduct of those elections. Much of the detailed factual dispute between the parties concerns these two counts, but the merits of these claims are not central to the motion to enjoin the 1987

election. Consideration of whether plaintiffs may bring those claims on behalf of a class will be deferred, therefore, as well as consideration of the claims or defenses specific to those counts.

class, Fed.R.Civ.P. 23(a)(2), but they need not show that all questions raised by the dispute are common. *E.g. Mosley v. General Motors Corp.* 497 F.2d 1330, 1334 (8th Cir.1974). Here, plaintiffs have identified a number of common questions which are at the very core of the dispute. The questions include the validity of the interim final rules, the constitutionality of the candidacy restrictions, and the validity of those restrictions under the statute. Virtually no individual questions are raised. Defendants have not contested commonality, and it is clear that plaintiffs have satisfied the requirement.

### 5. *Typicality*

■ Typicality is closely related to commonality. *See General Telephone Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370, n. 13, 72 L.Ed.2d 740 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge.") While various courts have interpreted the typicality requirement in different ways, *see generally Federal Practice* § 1764, the Eighth Circuit has suggested that the requirement is satisfied where other members of the class have "similar grievances." *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir.1977) (quoting *Wright v. Stone Container Corp.,* 524 F.2d 1058, 1062 (8th Cir.1975)), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977). The class members have "similar grievances" if they have been subjected to same allegedly unlawful treatment. *Wright,* 524 F.2d at 1062. That is, the plaintiffs' charges must be based on treatment "not special or unique to [themselves] and ... show[ ] that a significant number of other members of the class have been similarly [treated]...."

*Donaldson,* 554 F.2d at 825. Here, all of the class members have been subjected to the same allegedly unlawful treatment: denial of notice and an opportunity to comment on regulations that affect them and denial of an opportunity to serve on county committees.[5] The plaintiffs' claims are typical of those of the class.

### 6. *Adequacy of Representation*

The final Rule 23(a) requirement has two aspects: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

Plaintiffs' counsel are experienced and able lawyers; their qualifications under Rule 23(a)(4) are not disputed. Defendants do, however, assert that plaintiffs' interests are antagonistic to those of the class because the would-be representatives seek to delay the 1987 county committee elections.

■ Plaintiffs seeking to represent a class need not show that all class members agree with them. If they did, nearly any putative class could be defeated by the defendants' bald assertion that some of the class members might disagree with the plaintiffs. "In any conceivable class, some of the members ... will wish to assert their rights while others will not wish to do so." Wright, *Class Actions,* 47 F.R.D. 169, 174 (1969), *quoted in Horton v. Goose Creek Independent School District,* 690 F.2d 470 (5th Cir.1982), *cert. denied* 463

---

5. Relying on *Tate v. Weyerhaeuser Co.,* 723 F.2d 598, 608 (8th Cir.1983), *cert. denied,* 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984), defendants appear to argue that plaintiffs must show that others have complained or are willing to file affidavits that they feel wronged. *Tate* requires only "a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Id.* at 608 (quoting *Donaldson* ). It does not specify the manner of proof required. In *Tate,* a single putative class representative sought to charge defendant with numerous racially discrimina- tory employment practices. There was no evidence, however, that any other black worker had been treated as plaintiff alleged he had been treated. Plaintiff was not challenging any common mistreatment of blacks, but his own discharge. Thus, his discharge "did not present claims typical of the class as a whole, but rather, involved a special and unique situation." *Tate,* 723 F.2d at 609. The relevant question is how the class members have been treated, not how individual class members feel about that treatment. Here, defendants have treated all of the class members in the same way.

U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). Here, the court is persuaded that the plaintiffs will vigorously assert the rights of the class. The interests of any dissenting members are ably represented by the defendants themselves. *See Horton*, 690 F.2d at 487.

### 7. *Rule 23(b)(2)*

The final requirement for class certification is that plaintiffs satisfy one of the three subdivisions of Rule 23(b). Defendants do not contest plaintiffs' assertion that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). The class is properly certified under that subsection.

Plaintiffs may represent a class of Minnesota farmers who are ineligible to run for county committee membership under 7 C.F.R. § 2054.1104(d) and (f) on their first, second, third and fifth claims for relief. The court defers consideration of the motion for certification insofar as plaintiffs seeks to represent other persons and prosecute additional claims.

### D. Motion for Preliminary Injunction

■ In determining whether a preliminary injunction is appropriate, the court must consider four factors: (1) the probability of success on the merits, (2) the threat of irreparable harm, (3) the balance between that harm and any injury that the temporary relief would inflict on other parties, and (4) the public interest. *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 113 (8th Cir.1981). A preliminary injunction is an extraordinary remedy, and the burden is on the moving party to demonstrate that it is entitled to the relief sought.

■ Plaintiff seeks an order enjoining FmHA County Committee elections unless and until defendants (1) comply with the notice and comment requirements of the APA, (2) eliminate the challenged candidacy restrictions, (3) allow reasonable notice for nomination of candidates, and (4) "implement administrative review procedures to assure compliance with FmHA's regulation in conducting the elections.[6]

### 1. *Likelihood of Success on the Merits*
#### a. *Count 5*

Count 5 of the second amended complaint asserts that the Secretary's publication of immediately effective interim final rules violated 5 U.S.C. § 553 of the APA. Section 553 requires that a "[g]eneral notice of proposed rule making be published in the Federal Register," *id.* at § 553(b), that "interested persons [have] an opportunity to participate in the rule making" *id.* at § 553(c), and that the "required publication ... be made not less than 30 days before its effective date." *Id.* at § 553(d).

Defendants concede that they did not comply with these regulations, but assert that they were covered by valid exceptions to the general rule.[7] Notice of a proposed rule is not required

> when the agency for good cause finds (and incorporates the finding and a brief statement of the reasons therefore in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest

5 U.S.C. § 553(b)(B). The requirement that a rule be published not less than 30 days before its effective date is also waived "for good cause found and published with the rule." Id. at § 553(d)(3).

---

**6.** The last two aspects of the injunction sought clearly relate to plaintiffs' concerns about the 1986 elections. Even assuming that all plaintiffs' allegations about the conduct of those elections are accurate, there is no clear need for this relief at the present time. It has not been shown that the time restrictions and apparent confusion from the last election would carry over.

**7.** Under § 553(a)(2), the general rule making provisions do not apply "to the extent that there is involved ... a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." The Secretary of Agriculture has, however, directed that the department comply with the APA. 36 Fed. Reg. 13804 (July 24, 1971).

When he published the challenged regulations, the Secretary asserted that he had good cause for failure to comply with the usual APA requirements and provided a statement of reasons:

Any delay in implementing this rule would be contrary to the public interest. The FmHA County Committee process is integral to the Agency's farm loan programs. Terms for ... will be expiring at the end of June. If the election procedures are not in place in time for this transition, the Agency will be faced with over 2,000 vacancies.... With the expectation of receiving many more farm loans to process this year than last year, work ... will be greatly increased.... [T]emporary committee members [would] mean a lack of continuity in the process and possibly unacceptable delays in dealing with the increased workload. Should this occur, it would place a significant hardship on the farm communities. In addition, the expiration of terms ... is set to take place after farmers have completed spring planting. A delay in the election process would push the elections into a time period that would be disruptive to normal farm activities. A delay would also result in disruption to future election cycles. Furthermore, pursuant to the [APA] it is found upon good cause that notice and other public procedure with respect to this action are impracticable; and good cause is found for making this interim rule effective less than 30 days after publication....

51 Fed.Reg. at 18763 (May 22, 1986). Plaintiffs find this statement of reasons both incorrect and inadequate.

The comment requirement of § 553(b) and the notice requirement of § 553(c) serve different functions.

Subsection (b) ... provide[s] an opportunity for the public to participate in the rule making *prior* to the agency's adoption of the rule. *After* the rule is adopted subsection (d) ... provide[s] the public with an opportunity to prepare for the rule and to petition the agency for reconsideration.

*United States v. Gavrilovic,* 551 F.2d 1099, 1104, n. 9 (8th Cir.1977). The meaning of "good cause" arguably differs under the two provisions. *Cf. Northwest Airlines, Inc. v. Goldschmidt,* 645 F.2d 1309 (8th Cir.1981) (unnecessary to determine whether two "good cause" exceptions carry same meaning).

The Secretary has the burden of demonstrating good cause. *E.g., Northern Arapahoe Tribe v. Hodel,* 808 F.2d 741 (10th Cir.1987); *Buschmann v. Schweiker,* 676 F.2d 352, 347 (9th Cir.1982). *Cf. United States v. Gavrilovic,* 551 F.2d 1099, 1105 (8th Cir.1977) ("Congress intended to impose upon an administrative agency the burden [under § 553(d)(3)] of showing a public necessity.") Under subsection (b)(3)(B), the Secretary must show that "notice and public procedure ... are impracticable, unnecessary, or contrary to the public interest." Notice and public procedure are impracticable when the usual procedures would "unavoidably prevent" the "due and required execution of agency functions," S.Rep. No. 752, 79th Cong., 1st Sess. 14 (1945). They are unnecessary when the amendments are minor or merely technical. *Id.* "Public interest" supplements the other terms and is meant to suggest that the rule-making procedure should not prevent an agency from operating, and that lack of interest may make the procedure unnecessary. *Id.*

Defendants do not argue that the regulations here are technical or insignificant, so they must show that compliance with § 553 would have necessarily conflicted with the execution of their agency functions.[8] The

---

8. The APA does not, by its own terms govern the issuance of loan regulations such as these. 5 U.S.C. § 553(a)(2). The Department of Agriculture has, however, made the APA applicable to its loan programs. 36 Fed.Reg. 13804 (July 24, 1971). Defendants are thus bound to comply with the APA. *Rodway v. U.S.D.A.,* 514 F.2d 809, 814 (D.C.Cir.1975). While an agency that voluntarily agrees to comply with the APA arguably may interpret "good cause" somewhat more broadly, *see Alcaraz v. Block,* 746 F.2d 593 (9th Cir.1984), the fact that "the agency itself adopted the requirements of section 553(b) and (c) ... does not mean that it may follow the procedure arbitrarily, or use 'good cause' to

"good cause" exceptions are to be "narrowly construed and only reluctantly countenanced." *Alcaraz*, 746 F.2d at 612 (citations omitted). "Good cause" is not an "escape clause which may be arbitrarily exercised but requires legitimate grounds supported in law and fact by the required finding." *United States v. Gavrilovic*, 551 F.2d 1099, 1104 (8th Cir.1977) (citing the legislative history). Legitimate grounds are "an urgency of conditions coupled with a demonstrated and unavoidable limitations of time." *Id.*

Unavoidable time limitations are most commonly statutory. *E.g., Petry v. Block*, 737 F.2d 1193 (D.C.Cir.1984) (statute required Secretary to promulgate regulation within 60 days of enactment); *United States Steel Corp. v. United States Environmental Protection Agency*, 649 F.2d 572 (8th Cir.1981) (statute required agency to promulgate regulations within 60 days of receiving certain information from states). In the absence of a statutory or court-ordered deadline, "the urgent necessity for rapid administrative action under the circumstances" may justify invoking the good cause exception. *Northwest Airlines, Inc. v. Goldschmidt*, 645 F.2d 1309 (8th Cir.1981). Thus, where an airline committee notified an agency that, for the first time in its history, it could not reach agreement on the allocation of takeoff and landing slots at a major airport, and some allocation was essential to the airport's continued functioning, the agency permissibly sought comments and promulgated temporarily effective regulations on a rushed basis. *Id.* Similarly, where the hunting season had already begun, agency studies indicated that unregulated hunting could cause species to become endangered or extinct, and tribes had failed to enact game code, an agency had good cause to issue hunting regulations without notice and comment periods. *Northern Arapahoe Tribe v. Hodel*, 808 F.2d 741 (10th Cir.1987).

The "mere existence of a deadline, whether set by statute or court order, does not in itself constitute good cause." *Unit-*

ed States Steel Corp. v. United States Environmental Protection Agency*, 649 F.2d 572 (8th Cir.1981) (citations omitted). Rather, the courts have scrutinized the evidence that compliance with both the APA requirements and the deadline was impossible. Thus, in *United States Steel*, the Eighth Circuit joined four other circuits [9] in holding that the Environmental Protection Agency had not shown good cause under § 553(b)(B) even though Congress had provided only sixty days for the promulgation of an quality designations.

> The deadline is a factor to be considered, but the agency must still show the impracticality of affording notice and comment. Here, ... the EPA gives no explanation of why it could not have at least published the initial [designation] list ... and accepted comments during the time it was reviewing the list.

*Id.* at 575–76 (*quoting United States Steel Corp. v. United States Environmental Protection Agency*, 595 F.2d 207, 213 (5th Cir.), *modified on reh'g*, 598 F.2d 915 (1979)). On the other hand, the Mine Safety and Health Administration showed good cause for deferring implementation of mine safety regulations without notice or comment where five factors combine to create "a special, possibly unique, case." *Council of the Southern Mountains Inc. v. Donovan*, 653 F.2d 573, 581 (D.C.Cir.1981). The factors included delays beyond the agency's control in necessary field testing, diligent efforts to overcome the various hurdles placed in its path, and concerted efforts to get the regulations out earlier.

In the instant case, there was no congressional or judicial deadline binding the defendants. While FmHA's concerns about possible disruption of the existing calendar are not irrelevant, they do not create a de facto deadline or rise to the level of an emergency, in contrast to the situations giving rise to *Northwest Airlines* and *Northern Arapahoe Tribe*. Defendants have not shown that the five months they spent developing the regulations was necessary or suggested that any

---

manipulate the procedures to its own uses." *Alcaraz* (citing *Rodway*, 514 F.2d at 814).

**9.** Two others disagreed. *United States Steel*, 649 F.2d at 575.

forces beyond their control delayed their rule making. On the record now before the court, it appears that plaintiffs are likely to prevail on Count 5.

### b. Counts 1, 2 and 3

Counts 1 through 3 challenge the substance of the FmHA regulations barring the candidacy of "politically active" persons, 7 C.F.R. § 2054. 1104(d) and FmHA borrowers and their immediate families, 7 C.F.R. § 2054.1104(b). Plaintiffs assert that both subsections violate 7 U.S.C. § 1981(a) and the equal protection clause and that subsection (d) also violates plaintiffs' right to freedom of association.

*Politically active persons*

Plaintiffs argue that § 2054.1104(d) is broader than the Hatch Act, which bars partisan political participation by federal employees, including FmHA employees. Plaintiffs appear to have abandoned the argument that the regulation is broader than the Hatch Act because it bars not only partisan activity, but all political involvement. They continue to argue that county committee members are not FmHA employees and therefore not bound by the Hatch Act. Plaintiffs further assert that even if committee members may be subjected to the Hatch Act, abandoning all political involvement cannot be a prerequisite to mere candidacy.

The Hatch Act applies to "employee[s] in an Executive Agency," 5 U.S.C. § 7324(a). The parties agree that the relevant definition of employee is found at 5 U.S.C. § 2105, which provides in relevant part:

"employee" ... means an officer or individual who is

(1) appointed in the civil service by one of [numerous government officials] acting in an official capacity ...

(2) engaged in the performance of a Federal function under authority of law or an Executive act; and

(3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

There are three elements to the statute—appointment, federal function, and supervision—and "all must be complied with to achieve the status of employee." *McCarley v. Merit Systems Protection Board,* 757 F.2d 278, 280 (Fed.Cir.1985).

The parties agree that the elected committee members perform a federal function, but they disagree about whether they are "appointed" and "subject to supervision" under § 2105. Defendants assert that both tests are satisfied. They argue that elected committee members are "appointed" to the federal civil service on an intermittent basis. 7 C.F.R. § 2054.1126. They further argue that, as a factual matter, committee members are supervised directly by FmHA county supervisors and indirectly by the defendants Bjorhud and Clark. Plaintiffs, on the other hand, argue that elected officials cannot be "appointed" and that defendants' claims to "supervise" county committee members are inconsistent with congressional intent. That is, the legislative decision to replace appointed members with elected ones indicated an intent to increase committee independence that is arguably inconsistent with agency "supervision." *See* H.Rep. 99–271, 99th Cong., 1st Sess. 100–101, *reprinted in* 1985 U.S.Code Cong. & Admin.News 1103, 1204–05 ("The current appointive system allows the Secretary a free hand in selecting members of the committee. Although the many fine and dedicated county committee members now serving are to be commended for their work, *it is the system itself which precludes the sort of independence which is needed.*") (emphasis added).[10]

---

**10.** As plaintiffs note, the House Committee went on to compare the committee system of the Agricultural Stabilization and Conservation Service (ASCS) favorably with the old FmHA system:

The Agricultural and Conservation Service's committee system, by contrast, provides through its elective structure a body of knowl-

edgeable local framers who are accountable to their peers, and whose judgment is respected by virtue of both their independence from USDA's administrative structure and their accountability to the farmers of the county. The ASCS system does not work perfectly, but the local control it exemplifies is the direction in which FmHA needs to move.

None of the parties have provided any authority concerning the proper way to interpret "appointed" or "subject to ... supervision" under 5 U.S.C. § 2105. They have presented no evidence regarding legislative intent and no cases interpreting the terms. Based on the arguments now before the court, it appears more likely than not that elected FmHA committee members are employees within the meaning of 5 U.S.C. § 2105 and thus subject to the Hatch Act. Thus plaintiffs have not shown that they are likely to prevail on their argument that the elected committee members are exempt from restraints on partisan political activity.

Plaintiffs' argument is far stronger, however, insofar as it challenges any restraints on the political activities of mere candidates. If it is read to apply to candidates, 7 C.F.R. § 2054.1104(d) sweeps more broadly than the Hatch Act. While the government has long regulated the partisan political activities of its employees, *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 554, 93 S.Ct. 2880, 2885, 37 L.Ed.2d 796 (1973), it has not required that persons relinquish their political involvements before they become candidates for public employment. Thus, politically active individuals may make applications for public employment with the understanding that they will have to give up their political involvements *if* they obtain the government jobs they seek. The Hatch Act reflects "the judgment of Congress, the Executive, and the country ... that partisan political activities by federal employees must be limited if the government is to operate effectively and fairly, elections are to play their proper part in representative government, and employees themselves are to be sufficiently free from improper influences." *Id.* at 564, 93 S.Ct. at 2889–2890. These concerns do not, however, justify limitations on mere candidacy for public employment.

Plaintiffs have a strong argument that strict scrutiny should apply where a regulation bars citizens who are not government employees from participating fully in the political process. *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Magill v. Lynch*, 560 F.2d 22, 26 (1st Cir. 1977) (limiting *Mancuso v. Taft*, 476 F.2d 187 (1st Cir.1973)), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1236, 55 L.Ed.2d 763 (1978). Strict scrutiny applies to a regulation which has "real and appreciable impact" on a fundamental right. *Antonio v. Kirkpatrick*, 579 F.2d 1147 (8th Cir.1978). Even under the rational basis test, the restriction may not survive.[11] The plaintiffs are likely to prevail on both statutory and constitutional grounds insofar as they challenge an interpretation of § 2054.1104(d) that limits who can run for committee positions.

Although counsel apparently agree that § 2054.1104(d) limits who can become a candidate, it is not clear that their interpretation comports with the language of the regulations. The section provides a list of requirements that "elected and/or designated members and alternates must meet ... *to hold office* as a county committee member." 7 C.F.R. § 1054.1104 (emphasis added) The procedures set out in the regulations appear to suggest that the County Supervisor's review of the prospective county committee members—which includes a "determin[ation of] eligibility under the applicable regulations" does not take place until after the election. 7 C.F.R. § 2054.1126(c). The "Notice of Right to nominate by Petition" does not state any prohibition on political activity. It does note that "committee elections are open to all eligible voters without regard to ... political affiliation." Thus, it is not clear that would-be nominees have any reason to suspect that political activity may exclude them from eligibility to run. It may be that only counsel's interpretation of § 2054.1104(d), and not the regulation itself, is suspect.

*Borrowers, spouses and dependent children*

Borrowers and their immediate families present a somewhat different situation.

---

ACSC participants are not barred from committee service.

11. Defendants' argument that a politically active candidate could not serve if elected does not speak to the situation where the individual ceases all political activities upon taking office.

While politically active individuals may divest themselves of their political responsibilities and relationships, FmHA borrowers are unlikely to relinquish their loans in order to serve on the county committee.

FmHA employees are not eligible for FmHA loans, with two narrow exceptions. FmHA Instruction 2045–BB, § 2045.1355(h). Plaintiffs apparently concede that FmHA can place this restriction on its employees. Thus, if county committee members are employees, they too may not hold FmHA loans. Plaintiffs have not shown that they are likely to prove that committee members are not employees, and thus that FmHA cannot make borrowers ineligible to serve on county committees.

#### c. *Summary*

It appears at this stage that plaintiffs are likely to prevail on their claim that the regulations were promulgated in violation of the APA 5 U.S.C. § 553. They are also likely to prevail on their claim that politically active farmers cannot be prevented from running for county committee positions. On the record now before the court, however, plaintiffs have not shown that they are likely to prevail on their challenges to regulations which exclude borrowers and their immediate families and persons active in partisan politics from serving on the committee. The merits of disputes relating to the conduct of the 1986 election need not be considered at this time.

#### 2. *Irreparable Harm*

To obtain preliminary injunctive relief, plaintiffs must show that they will be irreparably harmed in the absence of such relief. Plaintiffs do not allege that they have been irreparably harmed by the lack of notice and opportunity for comment, thus a preliminary injunction cannot rest on a likely victory on that claim. They do allege that they are entitled to an injunction to redress the injury to their constitutional rights. *E.g., Henry v. Greenville Airport Commission,* 284 F.2d 631, 633 (4th Cir.

1960) (court must grant preliminary injunction to person who has clearly established violation of constitutional rights).

The only constitutional claim on which plaintiffs have shown a likelihood of success is their challenge to an interpretation of the regulations which bars potentially active persons from running for office. On the record now before the court, however, it does not appear that potential candidates did or would have understood any political involvements to bar their mere candidacy for committee positions. If defendants or their subordinates have rejected any nominating petitions because the candidates are politically active, some relief may be appropriate. Plaintiffs have not shown that this has occurred, however, and therefore have not shown irreparable harm.[12]

#### 3. *Balance of Harms and Public Interest*

The two remaining considerations—the balance of harms and the public interest—favor denying relief at this time. An injunction would do plaintiffs little practical good. While the 1987 elections were delayed, the committees would continue to be composed of appointed members and members chosen in challenged elections. Plaintiffs assert that both the 1986 and the 1987 elections are flawed, but it does not appear likely that the 1987 elections will have all of the deficiencies allegedly part of the 1986 elections. If plaintiffs were eventually to show that some or all of the 1987 elections were fatally defective, appropriate relief could be fashioned then.

#### ORDER

Accordingly, based on the above, and all the files, records and proceedings herein. IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for leave to file their second amended complaint is granted.

2. Plaintiffs' motion for class certification is granted, and a class, described as follows, is certified as to claims for relief 1, 2, 3, and 6:

All farmers in the State of Minnesota who are eligible to vote in FmHA county

---

**12.** Should plaintiffs show that nominating petitions were rejected for improper reasons, the affected elections might be invalid, and plaintiffs could be entitled to relief at that time.

committee elections, but ineligible to run for county committee membership under 7 C.F.R. § 2054.1104(d) and (f).

3. Plaintiffs' motion for a preliminary injunction is denied.

## ON REQUEST TO REPRESENT LARGER CLASS

Farmers Sam Hedge, Jim Stengrim, William Decker, and Lowell Nelson brought this action for injunctive and declaratory relief against the Secretary of Agriculture and the Administrator and Minnesota State Director of the Farmers Home Administration (FmHA). Plaintiffs challenge the legitimacy of regulations governing the FmHA County Commissioner elections and the election themselves. The second amended complaint alleges violations of the Food Security Act of 1985, the Administrative Procedures Act (APA), the challenged regulations, and a procedure notice governing the 1986 elections. It also alleges denial of constitutional rights to equal protection.

The court denied defendants' motion to dismiss on June 18, 1987. Plaintiffs moved to file the second amended complaint, for class certification, for a preliminary injunction, and for partial summary judgment. Because plaintiffs sought to enjoin elections to be held on June 30, 1987, the court considered the issues raised by that motion on an expedited basis. On June 29, 1987, the court granted plaintiffs' motion for leave to file their second amended complaint, certified a class as to the claims alleged in counts 1, 2, 3 and 5,[1] and denied plaintiffs' motion for a preliminary injunction. Since June 29, the parties have filed additional papers. Plaintiffs seek expanded class certification. Now under consideration are the remaining class certification questions. Plaintiffs have already had a hearing on their summary judgment motion; now defendants seek summary judgment. All summary judgment motions will be ruled on after the next hearing.

In its Memorandum Opinion and Order of June 29, 1987, the court concluded that plaintiffs had satisfied the requirements of F.R.Civ.P. 23(a) and (b)(2) and were entitled to represent a class defined as:

All farmers in the state of Minnesota who are eligible to vote in FmHA county committee elections, but ineligible to run for county committee membership under 7 C.F.R. § 2054.1104(d) and (f).

Plaintiffs could thus pursue their first, second, third and fifth claims for relief on behalf of this class. Broader proposed classes and the plaintiffs' fourth and sixth claims are now before the court.

Plaintiffs renew their request to represent a larger class. They consider it "imperative that the Court expand the class to [include] all voters who are eligible to vote in county committee elections [because] [a]ll of these voters' rights are being affected by the failure of defendants to comply with the notice and comment period, as well as by the exclusions that significantly restrict the pool of people from who all of the voters have to choose." Plaintiffs argue that the case law supports certification of a broader class.

"[T]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at last some theoretical, correlative effect on voters." *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1975). The court does not doubt that FmHA voters have a strong interest in rules regulating candidacy. This does not mean that the class must be expanded to include them, however. It appears that the smaller class already certified can adequately press the claims in this litigation. Under all the circumstances, there appears to be no need to certify a larger and potentially less manageable class. The court, of course, retains jurisdiction to redefine the class if the need arises. *See, e.g., General Telephone Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

Also at issue is whether the plaintiffs may press claims 4 and 6 on behalf of the class. Defendants believe that certification

---

**1.** It has been brought to the court's attention that the June 29, 1987 order contains a typographical error. The memorandum makes it clear that the court certified the class to proceed on counts 1, 2, 3 and 5, but the order on page 29 makes reference to counts 1, 2, 3 and 6. In light of the result reached today, it is unnecessary to amend the prior order.

on those claims would be improper because they allege specific violations of the regulations and procedure notice in some, but not all of the county committee elections. After reviewing the plaintiffs' allegations and the parties' arguments, the court concludes that the plaintiffs should be permitted to bring all of their claims as representatives of the class. While the precise violations alleged vary from county to county, it is clear that the allegations are essentially common. The claims of class members need not be identical; and there is no reason to require a class representative from every county in Minnesota to make these essentially common claims.

Accordingly, based upon the above and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that plaintiffs may bring all of their claims on behalf of a class defined as:

> All farmers in the state of Minnesota who are eligible to vote in FmHA county committee elections, but ineligible to run for county committee membership under 7 C.F.R. § 2054.1104(d) and (f).