# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3337

_____

| | | |
|---|---|---|
| James W. Parkhill, an individual, on behalf of himself and all others similarly situated, | * * * * | |
| Appellant, | * * | Appeal from the United States District Court for the |
| v. | * * | District of Minnesota. |
| Minnesota Mutual Life Insurance Company, | * * * | |
| Appellee. | * | |

_____

Submitted: October 17, 2001
Filed: April 18, 2002

_____

Before BOWMAN, RICHARD S. ARNOLD, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

James Parkhill (Parkhill), a Florida resident, brought this putative class action against the Minnesota Mutual Life Insurance Company (Minnesota Mutual), raising various claims related to Minnesota Mutual's alleged fraudulent and deceptive marketing practices and its maintenance of "vanishing premiums" life insurance

policies. In a series of three orders, the district court[1] dismissed several of Parkhill's claims, see Parkhill v. Minn. Mut. Life Ins. Co. (Parkhill (I)), 995 F. Supp. 983 (D. Minn. 1998); denied Parkhill's motion for class certification, see Parkhill v. Minn. Mut. Life Ins. Co. (Parkhill (II)), 188 F.R.D. 332 (D. Minn. 1999); and granted summary judgment in favor of Minnesota Mutual on Parkhill's remaining claims, see Parkhill v. Minn. Mut. Life Ins. Co. (Parkhill (III)), No. 97-CV-515, 2000 WL 33582649 (D. Minn. Aug. 25, 2000). On appeal, Parkhill argues the district court erred in denying class certification and in granting summary judgment in favor of Minnesota Mutual. We affirm.

## I.

The following material facts are stated in a light most favorable to Parkhill. Terry Russo, a Minnesota Mutual insurance agent, contacted Parkhill and his wife, Mary Parkhill, in 1985 to inquire about their interest in purchasing life insurance. The Parkhills had purchased whole life insurance policies from Minnesota Mutual in 1949 and in 1970, and although Russo was not the agent who sold the policies, he apparently believed the Parkhills again might be interested in purchasing Minnesota Mutual life insurance. Russo ultimately informed the Parkhills that they could purchase an Adjustable Life insurance policy providing $30,000 coverage in the event of James Parkhill's death at a cost of only one out-of-pocket premium payment of $645.50. Russo represented that further out-of-pocket payments would be unnecessary because the dividends generated on the new policy, along with dividends received from the couple's other Minnesota Mutual life insurance policies, would cover the policy's future annual premium of $1291.08. The Parkhills signed an application for the policy in January 1986, paid the initial $645.50 premium, and Minnesota Mutual issued the policy to the Parkhills.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

2

In September 1986, Minnesota Mutual sent the Parkhills a premium notice requesting a payment of $646.54 on the policy. (Appellant's App. at 246.) The Parkhills then contacted Russo who advised them that the premium payment would be satisfied from the policy's cash value. (Id.) Russo told the Parkhills to note his instructions on the statement and ignore the notice. (Id.) Minnesota Mutual again notified the Parkhills in March and September 1987 that the $646.54 premium was due. The Parkhills paid the premium on both occasions.

In 1988, Parkhill upgraded the policy to a whole life policy and increased his coverage to $40,000.[2] The change increased the annual premium to $3791, but Russo represented that the Parkhills could attain the additional coverage without incurring any "out-of-pocket" premium payments. (Id. at 246-47.) One would generally understand Russo's representation concerning the absence of out-of-pocket payments to suggest that the Parkhills would not be required to make any cash outlay to attain the increased coverage. That was not how the phrase was used or understood here, according to Parkhill. Russo instead proposed that the Parkhills finance the policy upgrade by surrendering two Paul Revere life insurance policies that the couple owned and applying the $7500 received from those policies to the annual premium due on the upgraded policy. (Appellant's App. at 1053-54, 1062-63, 1333, 1337-39.) Russo told the Parkhills that once the $7500 was invested in the upgraded policy, the total dividends generated from the couple's Minnesota Mutual policies would sustain the policy without any further cash outlay. (Id. at 1052, 1062, 1339). The Parkhills surrendered the Paul Revere policies and in May 1988, used a portion of the proceeds to make the first annual premium payment on the upgraded policy. (Id. at 88, 1092-93, 1532-33.)

---

[2]The terms of a Minnesota Mutual Adjustable Life insurance policy permit the policyholder to request changes in premium and coverage amounts as the policyholder's circumstances and objectives change. (Appellant's App. at 87.)

In March 1989, Minnesota Mutual sent the Parkhills a premium notice of $3791 on the upgraded policy. The Parkhills timely paid the premium with a check drawn on their personal account. (Id. at 1094-95, 1536.) The Parkhills received another notice in March 1990, requesting a premium payment of $3791. (Id. at 1101.) Shortly after receiving the notice, Mrs. Parkhill arranged for a change in the policy and completed the necessary paperwork to eliminate the couple's annual premium obligation altogether. (Id. at 1101-02.) Minnesota Mutual reissued the policy to the Parkhills in a nonpremium-payment status, meaning that the company agreed to satisfy any premium obligation from the policy's accumulated cash value. (Id. at 88.). When Minnesota Mutual sent the reissued policy to the Parkhills in 1990, it provided the couple with an illustration projecting the policy's future dividends and cash value for the years 1991 through 2000. (Id. at 1561-62.)

The Parkhills continued to receive annual statements reflecting that a portion of the annual premium had been deducted from the policy's cash value to keep the policy active. In February 1994, however, the Parkhills received a letter from their Minnesota Mutual agent, informing them that the policy would "expire with no value" in March 1999, if the Parkhills did not reinitiate premium payments. (Id. at 1569.) The Parkhills thereafter resumed paying premiums but complained to the Florida insurance commissioner. In February 1997, Parkhill filed a 13-count complaint in Minnesota state court. Minnesota Mutual removed the action to federal court and filed a motion to dismiss or, in the alternative, a motion for summary judgment. The district court granted the motion with respect to several of the claims but denied the motion as to Parkhill's claims for breach of contract, breach of fiduciary duty, breach of duty to deal with an insured in good faith, unjust enrichment, reformation, and his statutory claims under the Minnesota Deceptive Trade Practices Act, see Minn. Stat. §§ 325D.43-.48, and the Minnesota Consumer Fraud Act, see Minn. Stat. §§ 325F.68-.70. See Parkhill (I), 995 F. Supp. 983. Parkhill then filed an amended complaint and moved for class certification pursuant to Fed. R. Civ. P. 23. Parkhill's certification motion focused on Minnesota Mutual's advertisement and administration of Ultimate

Interest, the company's methodology for crediting interest on the cash values of its Adjustable Life policies and various categories of its other policies.[3]  The district court denied class certification, reasoning that questions common to the class did not predominate over other questions.  Parkhill (II), 188 F.R.D. at 345 (concluding the purported class could not satisfy Fed. R. Civ. P. 23(b)(3)).

The parties engaged in further discovery following the denial of class certification, culminating in cross-motions for summary judgment.  In ruling on the motions, the district court noted that Parkhill essentially was pursuing two actions: one based on the amended complaint's central allegation that Minnesota Mutual, through Russo, promised no further out-of-pocket premium payments; and one, albeit not alleged in the amended complaint but advanced in Parkhill's motion papers, based on Minnesota Mutual's purported failure to adhere to its advertised Ultimate Interest methodology.  Parkhill (III), 2000 WL 33582649, at *2.  In addressing Parkhill's pleaded action, the district court ruled that Parkhill's common law claims for breach of contract, breach of fiduciary duty, breach of the implied duty to deal with an insured in good faith, and his statutory claims were barred by Minnesota's six-year limitations period under Minn. Stat. § 541.05, subd. 1 (Supp. 2002), and were nonmeritorious in any event.  As for Parkhill's claims related to Ultimate Interest, the district court dismissed them because they appeared nowhere in the amended complaint.  Parkhill (III), 2000 WL 33582649, at *7-8.

II.

Parkhill argues that the district court erred in granting summary judgment on his breach of contract claims, fiduciary duty claim, and his deceptive trade practice and consumer fraud claims.  He contends genuine issues of fact exist which preclude

---

[3]The concept of Ultimate Interest is explained in greater detail in Parkhill (II), 188 F.R.D. at 336 n.4.

summary judgment on Minnesota Mutual's statute of limitations defense and on the merits of the claims. With respect to his claims based on Ultimate Interest, Parkhill argues the claims were adequately pleaded in his amended complaint. Lastly, Parkhill argues the district court committed reversible error in denying his motion for class certification.[4] We address each of these arguments in turn.

## A. Statute of Limitations

Both parties agree that Parkhill's breach of contract, breach of fiduciary duty, and statutory claims are governed by section 541.05's six-year limitations period. The crux of these claims is Parkhill's allegation that Russo promised that the policy would maintain itself without any further out-of-pocket premium payments. (Am. Compl., Appellant's App. at 397-98; see Appellant's Br. at 6-7.) Thus, as the district court concluded, the latest time that any of the claims could have accrued was the point at which Minnesota Mutual required Parkhill to make out-of-pocket payments that were inconsistent with Russo's alleged representations regarding the policy. See Klehr v. A.O. Smith Corp., 875 F. Supp. 1342, 1352-53 (D. Minn. 1995) (stating that statutory claims of consumer fraud and deceptive trade practice accrue at the time of the alleged statutory violation), aff'd, 87 F.3d 231 (1996), aff'd, 521 U.S. 179 (1997); Anderson v. Anderson, 197 N.W.2d 720, 726 (Minn. 1972) (concluding that breach of fiduciary duty accrues when claimant becomes aware, or should become aware by reasonable diligence, of facts supporting the claim); Estate of Riedel v. Life Care Ret. Cmtys., 505 N.W.2d 78, 81 (Minn. Ct. App. 1993) (recognizing that breach of contract cause of action accrues at time of the breach). Upon de novo review of the district court's summary judgment ruling, see Yates v. Rexton, Inc., 267 F.3d 793, 798

_____

[4]Although Parkhill challenges the district court's order in Parkhill (III), which also disposed of his equitable claims for unjust enrichment and reformation of the policy, he has not argued in his brief that the district court erred with respect to these claims. Because no grounds for reversal are stated, we deem the claims waived on appeal. See Harris v. Folk Constr. Co., 138 F.3d 365, 367 n.1 (8th Cir. 1998).

(8th Cir. 2001), we agree that Minnesota Mutual required Parkhill to make premium payments on the policy that were inconsistent with Russo's alleged representations and that Parkhill should have been aware by 1990, at the latest, that the policy was not performing as promised. Because Parkhill did not file suit until February 1997, we conclude that the claims at issue here are time-barred.

We reject Parkhill's argument that a reasonable jury could find that his claims did not accrue until February 1994, when he received the letter concerning the need to reinitiate premium payments to sustain the policy. According to Parkhill's affidavit, Russo initially represented in 1986 that the policy "along with [the couple's] other Minnesota Mutual policies would generate sufficient dividends to pay all future premiums." (Appellant's App. at 247.) The Parkhills, however, received two premium notices of $646.54 in 1987 (see id. at 1320) and made both payments without question. The fact that Minnesota Mutual required the Parkhills to make premium payments in 1987 was directly contrary to Russo's representations; the couple paid nearly $1300 in premium payments yet received only a total of a little more than $400 in dividends during 1987. (Id. at 1320, 1325-26.) Given the substantial difference between the amount of the premiums paid and the dividends generated, the Parkhills should have questioned the legitimacy of Russo's representations and the self-sustaining nature of the policy as early as 1987.

Further events occurred in 1988 which should have continued to alert the Parkhills that the policy was not performing as Russo allegedly had promised. In 1988, Russo allegedly told Parkhill that he could increase his coverage to $40,000 without ever making any additional out-of-pocket premium payments. (Id. at 246.) The district court concluded this representation, like Russo's 1986 representation, was contradicted when Minnesota Mutual required the Parkhills to make a $3791 premium payment on the policy in May 1988 and again in early 1989. Although Parkhill admits that he made the premium payments relied upon by the district court, he argues that the payments were consistent with Russo's representations and did not

raise suspicion. Parkhill claims Russo told the Parkhills to use the $7500 the couple received from the surrendered Paul Revere policies to fund the premium payment on the upgraded policy. Because the $7500 was used to cover the two premium payments, the Parkhills claim there was no reason to question Russo's representations. Even accepting their argument, however, the Parkhills should have questioned Russo's representation when they received the 1990 premium notice because the 1988 and 1989 premium payments of $3791 would have exhausted the cash value received from the Paul Revere policies, and Parkhill has not presented any evidence showing that the dividends the couple received were sufficient to satisfy the deficit. For instance, the Parkhills' March 1989 policy statement reflects an annual dividend of only $540.97. (Id. at 1534.)

The final straw is the contradictory information Minnesota Mutual made available to the Parkhills in 1990 when the couple took the necessary and affirmative steps to halt altogether their obligation to make premium payments on the policy. The fact that the Parkhills took this action seems, to us, to indicate that they did not expect the premium to "vanish" anytime soon. Parkhill argues, however, that Minnesota Mutual's assistance in discontinuing their obligation to make payments served only to confirm their belief that the policy was performing as promised; after all, they were not paying premiums from their own pockets. We do not presume any motive or knowledge from their actions. Instead, we rely on the policy projection information that Minnesota Mutual provided to the Parkhills when the company reissued the policy. The projections indicated that the policy would expire valueless in 1994 under the guaranteed rate of interest if the Parkhills made no further out-of-pocket premium payments. (Id. at 1560-61.) The projections further indicated that the policy would expire in 2000 under the higher, current rate of interest. (Id. at 1561.) Parkhill contends that the statement containing the projections was vague and would not have made it clear to the average person that the policy was forecasted to expire absent further premium payments. That may be so, but the statement does demonstrate an obvious, consistent, and pronounced diminution in the policy's cash

8

value which should have led the Parkhills to question the purported self-sustaining nature of the policy. The projected diminution in the policy's cash value should have been particularly troubling to Parkhill in light of his deposition testimony that he never believed the cash value would be depleted or used to pay the upgraded policy's premiums and that Russo <u>never</u> discussed the policy's accumulated cash value. (<u>Id.</u> at 1052.)

Considering the out-of-pocket payments made by the Parkhills and the facts available to the couple, we conclude that no reasonable jury would accept Parkhill's argument that the action accrued in 1994. We also find no factual support for Parkhill's argument that the limitations period was tolled based on Minnesota Mutual's alleged fraudulent concealment of the policy's performance. We therefore affirm the district court's determination that the claims are time-barred. Accordingly, we need not reach the district court's determinations of the merits of the claims.

## B. <u>Ultimate Interest</u>

Parkhill asserted on summary judgment that one of the reasons his policy failed to perform as promised was because Minnesota Mutual neglected to adhere to its advertised Ultimate Interest method of crediting the cash values of the company's policies. Parkhill argued that the company's marketing of Ultimate Interest and its failure to comply with the crediting methodology were sufficient to support claims for breach of contract, a deceptive trade practice, and consumer fraud. Admitting that such theories of liability were not explicitly pleaded in the amended complaint, Parkhill argues that the claims nevertheless were subsumed within those premised on Russo's purported representation that Parkhill's policy would sustain itself after time. According to Parkhill, Minnesota Mutual's method of crediting its policyholders' cash values was the basis for Russo's representations. Thus, even though Ultimate Interest is not identified as a basis for recovery, he suggests that the amended complaint gave Minnesota Mutual adequate notice of his claims.

Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." We have said that "[t]he essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" Hopkins v. Saunders, 199 F.3d 968, 973 (8th Cir. 1999) (quoting Redland Ins. Co. v. Shelter Gen. Ins. Cos., 121 F.3d 443, 446 (8th Cir. 1997)), cert. denied, 531 U.S. 873 (2000). The well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal conclusions identified therein, must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules. Id.

Upon our independent examination of the amended complaint, we agree with the district court that Parkhill fails to state any claims based upon the manner in which Minnesota Mutual advertised or administered Ultimate Interest. Parkhill has not alleged that he ever received any sales literature concerning Ultimate Interest or that Russo or any Minnesota Mutual agent discussed Ultimate Interest when Parkhill purchased or upgraded the policy. Similarly, the amended complaint does not identify the existence of an oral or written agreement between Parkhill and Minnesota Mutual concerning Ultimate Interest, nor does the complaint identify any breach of an agreement concerning it. We reject Parkhill's argument that several generic references to Minnesota Mutual's manner of crediting interest were sufficient to give fair notice of the claims. The vague references are included in the background section of the 48-page putative class complaint and are unrelated to any interaction between the Parkhills and Minnesota Mutual. See Atkins v. Northwest Airlines, Inc., 967 F.2d 1197, 1203 (8th Cir. 1992) (rejecting argument that broad allegation in "catch-all" section of complaint was sufficient to state a cause of action).

10

## C. Class Certification

A district court's decision to deny class certification is normally reviewed for an abuse of discretion. See Prince v. Endell, 78 F.3d 397, 399 (8th Cir. 1996). Minnesota Mutual argues, however, that our review is foreclosed because Parkhill did not indicate in his notice of appeal that he intended to appeal the district court's denial of class certification. We agree and conclude that we lack jurisdiction to review the denial.

Federal Rule of Appellate Procedure 3(c)(1)(B) provides that the notice of appeal must "designate the judgment, order, or part thereof being appealed." When determining whether an appeal from a particular district court action is properly taken, we construe the notice of appeal liberally and permit review where the intent of the appeal is obvious and the adverse party incurs no prejudice. Moore v. Robertson Fire Prot. Dist., 249 F.3d 786, 788 (8th Cir. 2001). Parkhill's notice of appeal indicates only that he appeals from the district court's August 25, 2000, order granting summary judgment in Parkhill (III). (Notice of Appeal, Appellant's App. at 2305.) No mention is made of the district court's order of a year earlier (Parkhill II) denying class certification. Our court previously has held that an appeal from one order does not "inherently imply" an intent to appeal other orders entered in the action. See Berdella v. Delo, 972 F.2d 204, 208 (8th Cir. 1992). Our court also has held on numerous occasions that a notice which manifests an appeal from a specific district court order or decision precludes an appellant from challenging an order or decision that he or she failed to identify in the notice. See Moore, 249 F.3d at 788 (holding that notice indicating appeal was from judgment on date of jury verdict was insufficient to preserve appeal from earlier order granting summary judgment); C & S Acquisitions Corp. v. Northwest Aircraft, Inc., 153 F.3d 622, 625-26 (8th Cir. 1998) (holding that notice indicating the appeal was from summary judgment order was insufficient to confer appellate jurisdiction to reach appellant's challenge to earlier order compelling arbitration); Bosley v. Kearney R-1 Sch. Dist., 140 F.3d 776,

11

780-81 (8th Cir. 1998) (concluding that notice stating appeal was from entry of judgment as a matter of law was insufficient to confer appellate jurisdiction over earlier summary judgment order). But cf. Greer v. St. Louis Reg'l Med. Ctr., 258 F.3d 843, 846 (8th Cir. 2001) ("Ordinarily, a notice of appeal that specifies the final judgment in a case should be understood to bring up for review all of the previous rulings and orders that led up to and served as a predicate for that final judgment.").

Parkhill argues that his intent to appeal the denial of class certification was apparent because he filed a motion with the district court to certify the denial for interlocutory appeal. While the intent to appeal may be obvious from the procedural history of a case or from the appeal information form completed by an appellant, see Berdella, 972 F.2d at 208, no such intent is obvious here. Parkhill's appeal information form does not mention the denial of class certification, and the district court's order denying certification did not serve as a predicate to the final disposition of Parkhill's claims; procedurally, the order had no bearing on the merits of his claims. Minnesota Mutual easily could have assumed that Parkhill abandoned his attempt to certify a class when Parkhill failed to include the issue in his notice of appeal and in the appeal information form. Accordingly, we hold that Parkhill has not complied with Rule 3(c)(1)(B). We therefore lack jurisdiction to review the denial of class certification.

III.

For the foregoing reasons, we affirm the judgment of the district court.

12

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.